[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter came before this court on an application for a Prejudgement Remedy (hereafter, "[PJR").
On October 1, 1990 the defendant, Lallie Hirschfeld, took possession of 1,300 square feet at 190 Main Street, Westport, CT, also known as Avery Commons, pursuant to a written lease. The term of the lease was 3 years. She operated a woman's clothing store there for 3 months and on January 1, 1991 abandoned the premises and returned possession to the landlord.
Pursuant to the lease, the tenant agreed to pay $3,000 per month rent during the first year and $2,800 per month in each of the 24 remaining months. (Paragraph 3 of the lease) In addition she agreed to pay additional rent commencing October 1, 1991 and throughout the remainder of the lease term; items of additional rent included 18% of the annual real estate taxes and any special assessments, certain operating and maintenance expenses and property management fees. (Paragraph 4) Further, she agreed to pay her own utilities and heat (PP9) and various expenses which would result from her default. (Paragraph 18)
The defendant did not personally appear at the hearing on the pre-judgement remedy application and did not offer evidence in opposition to the plaintiffs' claim.
One of the plaintiffs, Jaroslaw Paluha, appeared and testified as to the elements of his claim for damages. The tenant defaulted at a very early stage in the tenancy, and, therefore, much of the plaintiff's figures are estimated. (See Exhibit "C") CT Page 4044
A hearing on an application for a pre-judgement remedy is limited to a determination of whether or not there is probable cause to sustain the validity of the plaintiff's claim. (C.G.S. 52-278d). Civil probable cause is defined as a "bona fide belief in the existence of facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, entertaining it". Wall v. Toomey, 52 Conn. 35, 36
(1884); One Fawcett Place Limited Partnership v. Diamandis Communications, Inc., 24 Conn. App. 524, 525 (1991)].
In Rokalor. Inc. v. Connecticut Eating Enterprises, Inc.18 Conn. App. 384,388, the Court states,
 When a Lessee breaches a lease for commercial property the Lessor has two options: (1) to terminate the tenancy, or (2) to refuse to accept the surrender. (Citations omitted) . . . Where the landlord elects to terminate the tenancy, however, the action is one of breach of contract; (citations omitted) and when the tenancy is terminated, the landlord is obliged to mitigate his damages.
Mr. Paluha listed the premises with a realtor and testified that varying techniques were used such as mailings and newspaper advertisements to find a new tenant. However, he testified that he is listing the property at a higher rate per square foot ($29) than he had contracted for with the defendant but that he would be willing to negotiate downward. However, he had rejected an offer of $16 per square foot. He also believes that the premises will remain vacant for some time due to the present economic conditions. Quaere whether or not, given his opinion as to the duration of a poor market, he should not have accepted the offer of $16 per square foot.
Therefore, the conclusion that the plaintiff will suffer the loss of $123,636 through September, 1993, as projected in Exhibit C, is too speculative, even in the present economic climate. If indeed the prospects for renting the premises are so bleak, then perhaps the plaintiff should have accepted the offer to rent at $16 per square foot, which is approximately 60% of the defendant's rent under the lease. The defendant's total projected damages includes a set-off of a security deposit in the amount of $6,000 and amounts for electricity and heat usage based on assumptions regarding the defendant's brief use of the property as well as the plaintiffs' experience.
Accordingly, the Court finds that there is probable cause to sustain the validity of the plaintiffs' claim and directs that a pre-judgement attachment enter in the amount of $75,000.
LEHENY, J. CT Page 4045